1  SANFORD JAY ROSEN – 062566
2  JEFFREY L. BORNSTEIN – 099358
   CHRISTOPHER HU – 293052
3  ROSEN BIEN GALVAN & GRUNFELD LLP
   50 Fremont Street, 19th Floor
4  San Francisco, California  94105-2235
   Telephone:  (415) 433-6830
5  Facsimile:  (415) 433-7104
   Email:     srosen@rbgg.com
6             jbornstein@rbgg.com
              chu@rbgg.com
7
   BRIAN A. VOGEL – 167413
8  LAW OFFICES OF BRIAN A. VOGEL, PC
   770 County Square Drive, Suite 104
9  Ventura, CA 93003
   Telephone:  (805) 654-0400
10 Facsimile:  (805) 654-0326
   Email:     brian@bvogel.com
11
   SABARISH NEELAKANTA – Fla. Bar No. 26623*
12 MASIMBA MUTAMBA – Fla. Bar No. 102772*
   DANIEL MARSHALL – Fla. Bar No. 617210*
13 HUMAN RIGHTS DEFENSE CENTER
   P.O. Box 1151
14 Lake Worth, Florida  33460
   Telephone:  (561) 360-2523
15 Email:     sneelakanta@hrdc-law.org
              mmutamba@hrdc-law.org
16            dmarshall@hrdc-law.org

17 *Pro hac vice applications to be filed

18 Attorneys for Plaintiff

19              UNITED STATES DISTRICT COURT

20       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

21

22 HUMAN RIGHTS DEFENSE CENTER,        Case No.

23              Plaintiff,             **COMPLAINT FOR
                                       DECLARATORY AND
24       v.                            INJUNCTIVE RELIEF AND
                                       DAMAGES UNDER THE CIVIL
25 COUNTY OF LOS ANGELES; JIM          RIGHTS ACT, 42 U.S.C. § 1983,
   MCDONNELL, Sheriff, Los Angeles     CALIFORNIA CIVIL CODE
26 County; NEAL TYLER, Executive       § 52.1, AND THE CALIFORNIA
   Officer, Los Angeles County Sheriff's CONSTITUTION**
27 Department; KELLY HARRINGTON,
   Assistant Sheriff, Los Angeles County; **JURY TRIAL DEMANDED**
28 JOANNE SHARP, Custody Services

1  Division Chief, Los Angeles County
   Sheriff's Department; KEVIN HEBERT,
2  Custody Services Commander, Los
   Angeles County Sheriff's Department;
3  ROOSEVELT JOHNSON, Custody
   Services Commander, Los Angeles
4  County Sheriff's Department; KEVIN
   KUYKENDALL, Custody Services
5  Commander, Los Angeles County
   Sheriff's Department; ERIC PARRA,
6  Division Chief, Los Angeles County
   Sheriff's Department; ELIER
7  MOREJON, Captain, Los Angeles
   County Sheriff's Department; DANIEL
8  DYER, Commander, Los Angeles
   County Sheriff's Department; ANA
9  BRACKPOOL, Captain, Los Angeles
   County Sheriff's Department; AGUSTIN
10 DEL VALLE, Captain, Los Angeles
   County Sheriff's Department, in their
11 individual and official capacities; TERRI
   MCDONALD, in her individual capacity;
12 and DOES 1-10, in their individual and
   official capacities,
13
                  Defendants.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[3138846.5]

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

1

**INTRODUCTION**

2    Plaintiff HUMAN RIGHTS DEFENSE CENTER ("HRDC" or "Plaintiff")

3 brings this action to enjoin censorship of its publications and other correspondence

4 mailed by its publishing project Prison Legal News to prisoners held in Defendants'

5 custody at Los Angeles County's Men's Central Jail ("Men's Central Jail").

6 Defendants' mail policies and practices unconstitutionally prohibit delivery of

7 Plaintiff's magazines and enveloped mail to prisoners housed both in the Men's

8 Central Jail's general population and in the restrictive housing unit known as "K-10"

9 in violation of the First Amendment to the United States Constitution.  Defendants'

10 policies and practices also deny due process of law to senders, like Plaintiff, by

11 failing to provide notice of and an opportunity to challenge each instance of

12 censorship as required by the Fourteenth Amendment to the United States

13 Constitution.  In addition, Defendants' policies and practices violate the Bane Act

14 (Cal. Civ. Code § 52.1) and the California Constitution.

15

**JURISDICTION AND VENUE**

16    1.    This action is brought pursuant to 28 U.S.C. § 1331 (federal question),

17 as this action arises under the Constitution and laws of the United States, and

18 pursuant to 28 U.S.C. § 1343 (civil rights), as this action seeks redress for civil

19 rights violations under 42 U.S.C. § 1983.

20    2.    Venue is proper under 28 U.S.C. § 1391(b).  On information and belief,

21 at least one Defendant resides within this judicial district, and the events giving rise

22 to the claims asserted herein all occurred within this judicial district.

23    3.    Plaintiff's claims for relief under federal law are predicated upon 42

24 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of

25 state law, of rights, privileges and immunities secured to the Plaintiff by the First,

26 Fifth, and Fourteenth Amendments to the U.S. Constitution and laws of the United

27 States.

28    4.    Plaintiff's claims for relief under state law are predicated upon the

[3138846.5]

1

1   Bane Act (Cal. Civ. Code § 52.1), which authorizes actions to protect the exercise or

2   enjoyment of rights secured under federal or California law, as well as upon the

3   direct causes of action to enforce constitutional rights guaranteed under article I,

4   section 2 of the California Constitution, and article I, section 7 of the California

5   Constitution.

6         5.    This Court has jurisdiction over claims seeking declaratory and

7   injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the

8   Federal Rules of Civil Procedure, as well as nominal and compensatory damages,

9   against all Defendants.

10         6.    Plaintiff's claim for attorneys' fees and costs under federal law is

11   predicated upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees

12   and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

13         7.    Plaintiff's claim for attorneys' fees and costs under state law is

14   predicated upon California Civil Code § 52.1, which authorizes the award of

15   attorneys' fees and costs in an action brought under that statute, and California Code

16   of Civil Procedure § 1021.5, which authorizes the award of attorneys' fees and costs

17   to prevailing plaintiffs whose actions vindicate important rights.

18         8.    Plaintiff is informed, believes, and based thereon alleges that the

19   individual Defendants acted as described herein with reckless disregard for

20   Plaintiff's rights and/or with the intent to injure, vex, annoy and harass Plaintiff, and

21   subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

22   rights with the intention of causing Plaintiff injury and depriving it of its

23   constitutional rights.

24         9.    As a result of the foregoing, Plaintiff seeks compensatory and punitive

25   damages against the individual Defendants.

26         10.    This Court has supplemental jurisdiction over Plaintiff's state-law

27   claims pursuant to 28 U.S.C. § 1367, as they arise from the same case or

28   controversy as Plaintiff's claims under federal law.

1

**PARTIES**

2     11.     HRDC is a not-for-profit charitable corporation recognized under

3  § 501(c)(3) of the Internal Revenue Code with its principal offices in Lake Worth,

4  Florida.  The purpose of HRDC, as stated in its Articles of Incorporation, is to

5  educate prisoners and the public about the destructive nature of racism and sexism,

6  as well as the economic and social costs of prisons to society.  Prison Legal News is

7  a wholly-owned project and the publishing arm of HRDC.  Through its publishing

8  project, HRDC engages in core protected speech and expressive conduct on matters

9  of public concern, such as the operation of prison facilities, prison conditions,

10  prisoner health and safety, and prisoners' rights.  HRDC's publications contain

11  political speech and social commentary, which are core First Amendment rights and

12  are entitled to the highest protection afforded by the U.S. Constitution.  For more

13  than 25 years, the focus of HRDC's mission has been public education, advocacy

14  and outreach on behalf of, and for the purpose of assisting, prisoners who seek legal

15  redress for infringements of their constitutionally-guaranteed and other basic human

16  rights.  HRDC's mission, if realized, has a salutary effect on public safety.

17     12.     Defendant COUNTY OF LOS ANGELES ("Los Angeles County" or

18  "County") is a political subdivision of the State of California organized and existing

19  under the laws of California.  Los Angeles County is, and was at all relevant times

20  mentioned herein, responsible for the actions and/or inactions and the policies,

21  procedures, customs and practices of the Los Angeles County Sheriff's Department

22  ("Sheriff's Department" or "Department") and its employees and agents.  The

23  Department currently operates at least six detention facilities: Men's Central Jail;

24  North County Correctional Facility; Pitchess Detention Center North Facility;

25  Pitchess Detention Center South Facility; Twin Towers Correctional Facility; and

26  Century Regional Detention Center.  The Department is and was responsible for

27  adopting and implementing mail policies governing incoming mail for inmates at all

28  Los Angeles County jails, including Men's Central Jail.

13.     Defendant JIM MCDONNELL is the Los Angeles County Sheriff, and has held this position since December 1, 2014.  Defendant MCDONNELL is employed by and is an agent of Defendant COUNTY OF LOS ANGELES and the Sheriff's Department.  He is responsible for overseeing the management and operations of the jails, and for the hiring, screening, training, retention, supervision, discipline, counseling, and control of the personnel of the Los Angeles County jails who interpret and apply the jails' inmate mail policy.  As Sheriff, Defendant MCDONNELL is a final policymaker for Defendant COUNTY OF LOS ANGELES with respect to the operations of all Los Angeles County jails, inclusive of Men's Central Jail, including for policies governing incoming mail for inmates.  He is sued in his individual and official capacities.

14.     Defendant NEAL TYLER is Executive Officer of the Sheriff's Department.  Defendant TYLER is employed by and is an agent of Defendants COUNTY OF LOS ANGELES and JIM MCDONNELL, as well as the Sheriff's Department.  Upon information and belief, he is personally involved in the adoption and/or implementation of the mail policies at issue and is responsible for overseeing, planning, coordinating and evaluating the legality of the mail policies and practices at the Men's Central Jail.  He is sued in his individual and official capacities.

15.     Defendant KELLY HARRINGTON is the Assistant Sheriff in charge of Custody Operations for the Sheriff's Department and was appointed to the position in 2016.  He is employed by and is an agent of Defendant COUNTY OF LOS ANGELES and the Sheriff's Department.  Custody Operations includes all jail responsibilities related to inmate services, including but not limited to reception, booking and classification, housing, and other jail services.  As Assistant Sheriff in charge of Custody Operations, Defendant HARRINGTON is responsible for the operation and management of the Los Angeles County jails and for the promulgation and implementation of Custody Operations policies, including the inmate mail policies challenged herein.  He is also responsible for the hiring,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

[3138846.5]

1    screening, training, retention, supervision, discipline, counseling, and control of the

2    personnel of the Los Angeles County jails, including the Men's Central Jail, who

3    interpret and apply the inmate mail policy.  He is sued in his individual and official

4    capacities.

5           16.    Defendant JOANNE SHARP is the Division Chief for the Sheriff's

6    Department's Custody Services Division – General Population, a division within

7    Custody Operations.  She is employed by and is an agent of Defendant COUNTY

8    OF LOS ANGELES and the Sheriff's Department.  In that capacity, Defendant

9    SHARP is responsible for the implementation of Custody Services policies at Los

10   Angeles County jail facilities, including the inmate mail policies challenged herein,

11   and for the hiring, screening, training, retention, supervision, discipline, counseling,

12   and control of the personnel of the Los Angeles County jails who interpret and apply

13   the inmate mail policy.  She is sued in her individual and official capacities.

14          17.    Defendant KEVIN HEBERT is a Commander in the Sheriff's

15   Department's Custody Services Division – General Population.  He is employed by

16   and is an agent of Defendant COUNTY OF LOS ANGELES and the Sheriff's

17   Department.  In that capacity, Defendant HEBERT is responsible for the

18   implementation of Custody Services policies at Los Angeles County jail facilities,

19   including the inmate mail policies challenged herein, and for the hiring, screening,

20   training, retention, supervision, discipline, counseling, and control of the personnel

21   of the Los Angeles County jails who interpret and apply the inmate mail policy.  He

22   is sued in his individual and official capacities.

23          18.    Defendant ROOSEVELT JOHNSON is a Commander in the Sheriff's

24   Department's Custody Services Division – General Population.  He is employed by

25   and is an agent of Defendant COUNTY OF LOS ANGELES and the Sheriff's

26   Department.  In that capacity, Defendant JOHNSON is responsible for the

27   implementation of Custody Services policies at Los Angeles County jail facilities,

28   including the inmate mail policies challenged herein, and for the hiring, screening,

[3138846.5]

1  training, retention, supervision, discipline, counseling, and control of the personnel

2  of the Los Angeles County jails who interpret and apply the inmate mail policy.  He

3  is sued in his individual and official capacities.

4        19.    Defendant KEVIN KUYKENDALL is a Commander in the Sheriff's

5  Department's Custody Services Division – General Population.  He is employed by

6  and is an agent of Defendant COUNTY OF LOS ANGELES and the Sheriff's

7  Department.  In that capacity, Defendant KUYKENDALL is responsible for the

8  implementation of Custody Services policies at Los Angeles County jail facilities,

9  including the inmate mail policies challenged herein, and for the hiring, screening,

10  training, retention, supervision, discipline, counseling, and control of the personnel

11  of the Los Angeles County jails who interpret and apply the inmate mail policy.  He

12  is sued in his individual and official capacities.

13        20.    Defendant ERIC PARRA was the Division Chief for the Sheriff's

14  Department's Custody Services Division at all relevant times mentioned herein until

15  early 2017, when he was reassigned to Patrol Operations.  He is employed by and is

16  an agent of Defendant COUNTY OF LOS ANGELES and the Sheriff's Department.

17  In his capacity as Custody Services Division Chief, Defendant PARRA was

18  responsible for the implementation of Custody Services policies at Los Angeles

19  County jail facilities, including the inmate mail policies challenged herein, and for

20  the hiring, screening, training, retention, supervision, discipline, counseling, and

21  control of the personnel of the Los Angeles County jails who interpret and apply the

22  inmate mail policy.  He is sued in his individual and official capacities.

23        21.    Defendant ELIER MOREJON is the Captain in charge of the Inmate

24  Reception Center at Men's Central Jail.  He is employed by and is an agent of

25  Defendant COUNTY OF LOS ANGELES and the Sheriff's Department.  Defendant

26  MOREJON supervises mailroom staff and manages the inspection and routing of all

27  incoming inmate mail to the Men's Central Jail.  He is sued in his individual and

28  official capacities.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

[3138846.5]

22.    Defendant DANIEL DYER is the Commander in charge of the Sheriff's Department's Custody Services Administration Command.  Defendant DYER was previously the Captain in charge of the Men's Central Jail.  He is employed by and is an agent of Defendant COUNTY OF LOS ANGELES and the Sheriff's Department.  As Captain in charge of the Men's Central Jail, Defendant DYER supervised and managed all of the daily operations of the Men's Central Jail. In his current position, Defendant DYER is responsible for the implementation of Custody Services policies at Los Angeles County jail facilities, including the inmate mail policies challenged herein, and for the hiring, screening, training, retention, supervision, discipline, counseling, and control of the personnel of the Los Angeles County jails who interpret and apply the inmate mail policy.  He is sued in his individual and official capacities.

23.    Defendant ANA BRACKPOOL is one of two Captains in charge of the Men's Central Jail.  She is employed by and is an agent of Defendant COUNTY OF LOS ANGELES and the Sheriff's Department.  Defendant BRACKPOOL supervises and manages all of the daily operations of the Men's Central Jail.  She is sued in her individual and official capacities.

24.    Defendant AGUSTIN DEL VALLE is one of two Captains in charge of the Men's Central Jail.  He is employed by and is an agent of Defendant COUNTY OF LOS ANGELES and the Sheriff's Department.  Defendant DEL VALLE supervises and manages all of the daily operations of the Men's Central Jail.  He is sued in his individual and official capacities.

25.    Defendant TERRI MCDONALD was the Assistant Sheriff in charge of Custody Operations for the Sheriff's Department from 2013 until her retirement from the Sheriff's Department in spring 2016.   She was employed by and was an agent of Defendant COUNTY OF LOS ANGELES and the Sheriff's Department. As Assistant Sheriff in charge of Custody Operations, Defendant MCDONALD was responsible for the operation and management of the Los Angeles County jails and

[3138846.5]

for the promulgation and implementation of Custody Operations policies, including the inmate mail policies challenged herein.  She was also responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of the personnel of the Los Angeles County jails, including the Men's Central Jail, who interpret and apply the inmate mail policy.  She is sued in her individual capacity.

26.    The true names and identities of Defendants DOES 1 through 10 are presently unknown to HRDC.  Each of Defendants DOES 1 through 10 are or were employed by and are or were agents of Defendant COUNTY OF LOS ANGELES and the Sheriff's Department when some or all of the challenged inmate mail policies and practices at the Men's Central Jail were adopted and/or implemented. Each of Defendants DOES 1 through 10 are or were personally involved in the adoption and/or implementation of the Custody Services Division's mail policies for inmates, and/or are or were responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and/or control of the Men's Central Jail staff who interpret and implement these inmate mail policies.  They are sued in their individual and official capacities.  HRDC will seek to amend this Complaint as soon as the true names and identities of Defendants DOES 1 through 10 have been ascertained.

27.    At all times material to this action, the actions of all Defendants as alleged herein were taken under the authority and color of state law.

## FACTUAL ALLEGATIONS

28.    The Los Angeles County jail system currently consists of six correctional facilities and holds the largest number of pre-trial detainees in the United States.  Over half of the prisoners within the jail system have yet to stand trial or be sentenced for a crime.

29.    The Men's Central Jail has a bed capacity of 5,640 prisoners and houses prisoners of every security level, from general population to high security prisoners.  It houses the majority of the pre-trial detainees in the Los Angeles

[3138846.5]

1   County jail system.  The K-10 unit within Men's Central Jail houses prisoners

2   whom Defendants have segregated from the general population for a variety of

3   reasons.  For instance, the K-10 unit houses prisoners whom Defendants have

4   determined need to be protected from other prisoners because of the crimes with

5   which they have been charged.

6           30.    HRDC, through its publication project Prison Legal News, publishes

7   and distributes a soft-cover monthly magazine titled *Prison Legal News: Dedicated*

8   *to Protecting Human Rights*, which contains news and analysis about prisons, jails

9   and other detention facilities, prisoners' rights, court opinions, management of

10  prison facilities, prison conditions, and other matters pertaining to the rights and/or

11  interests of incarcerated individuals.  The monthly magazine is published on

12  newsprint and is 72 pages long.  HRDC has thousands of subscribers to its monthly

13  magazine in the United States and abroad, including prisoners, attorneys, journalists,

14  public libraries, judges, and members of the general public.  HRDC distributes its

15  monthly magazine and other publications to prisoners and law librarians in more

16  than 2,200 correctional facilities located across all fifty states, including Federal

17  Bureau of Prisons institutions such as the Lompoc Federal Correctional Institute and

18  the Los Angeles Metropolitan Detention Center.  HRDC's monthly magazine and

19  other publications are distributed in prisons run by the California Department of

20  Corrections and Rehabilitation, as well as in county jails throughout California,

21  including San Diego County Jail, Sacramento County Jail, and Ventura County Jail.

22  HRDC's publications are also distributed in death row units and "supermax"

23  facilities throughout the United States, including the ADX Supermax at Florence,

24  Colorado, the most secure prison in the United States.

25          31.    In addition to monthly magazine issues, HRDC also sends to prisoners:

26  (a) *Prison Legal News* subscription renewal letters in individually-addressed

27  envelopes; (b) informational brochure packets that contain a brochure and

28  subscription order form, a book list, and a published books brochure (each of which

[3138846.5]

is a single page); and (c) copies of judicial opinions of import to prisoners.

**Defendants' Inmate Mail Policy**

32.     Defendants' inmate mail policy is posted on its public website at http://shq.lasdnews.net/pages/PageDetail.aspx?id=1512 (last visited July 3, 2017). This policy, entitled "Inmate Mail Regulations," provides in pertinent part:

> The Los Angeles County Sheriff's Department has strict inmate mail procedures for security and safety reasons.  All inmates are advised of these regulations/guidelines via handouts, and/or posted information within Inmate Reception Center and Century Regional Detention Facility.  They are directed to notify anyone that might send mail or parcels.  Any mail or parcels that are received contrary to these guidelines will be returned "intact" to the sender. Many of the items that are not allowed, are readily available through the jail stores.
>
> Your cooperation when corresponding with an inmate will be greatly appreciated.
>
> All envelopes and paper must be free of debris and/or any illegal substances, perfume/cologne, lip stick, or dried liquids.
>
> Your mail or parcel will been returned for the following reason(s):
>
> * Food or cosmetic items  (lipstick, perfume, unknown stains)
>
> * Blank envelopes (with or without postage attached), blank paper, (stationery)
>
> * Envelopes with metal clasps
>
> * Postage stamps that were not used to mail package
>
> * Envelopes with gang or suggestive drawings
>
> * No artwork in crayon, marker, or colored pencils.
>
> * Copyright material (this includes, printed song lyrics; book passages; articles)
>
> * Cash, personal or second party checks, payroll checks, out of state checks
>
> * Money order exceeding the $200 limit
>
> * Blank money orders (money orders must be signed and made payable to the inmate)
>
> * Out of state money orders (must be from a US Postal Office)
>
> * Greeting cards: that plays music; plastic; blank; tri fold; larger than 6"x 9"; pop up style; 3D style; includes ribbons and/or bows; have been

[3138846.5]

altered. Postcards larger than 6"x 9"

* Photographs or pictures that depict full or partial nudity; suggestive; depict gang tattoos or hand gestures

* Picture inside a picture photographs (a picture that has a smaller photo within the picture)

* Photographs of headshots

* Identification cards or facsimiles

* Photographs that depict inmate for whom the mail is intended

* Paper clips, staples, pens, pencils, glitter, stickers, glued or gummed labels

* Rosary beads, balloons, string bracelets or jewelry items

* Lottery tickets or pre-paid telephone cards

* Cellophane tape or any type of tape on letters

With respect to photographs and computer generated pictures, the following WILL be accepted:

* Maximum of five (5) photographs are allowed (each photograph on a collage is included in this count and measured separately)  no polaroid photographs, no collages

* Photographs or computer generated pictures must be a minimum of 3"x 5" and a maximum of 4"x 6" in size

* OTHER: The Los Angeles County Sheriff's Department has the right to return any item(s) that are deemed potentially harmful and/or possibly cause security concerns within the Jail environment.

With respect to books, publications or periodicals, we will not accept:

* Anything NOT sent directly from a bookstore or a publisher

* Anything of an explicit sexual nature

* More than three (3) books per week

* More than three (3) magazines per week

* No hardcover books

* Audio, CDs or Cassette tape

### Defendants' Censorship of HRDC's Mail

33.     Defendants have censored the following materials that Plaintiff sent to

individual prisoners at the Men's Central Jail: (1) issues of the monthly magazine, *Prison Legal News*, that were mailed to subscribers; (2) sample issues of *Prison Legal News* that were mailed to prospective subscribers; (3) subscription renewal letters; (4) informational brochure packets; and (5) court opinions.  Defendants refused to deliver said items to the prisoners and, in some instances, returned items to Plaintiff's office via the "Return To Sender" service of the United States Postal Service.  Defendants continue to censor the items listed above.

34.    Since August 2015, Plaintiff has identified at least one hundred and forty-nine (149) items of mail sent by HRDC to prisoners at Men's Central Jail that were withheld by Defendants.  This restriction on written speech sent to prisoners at Men's Central Jail is not rationally related to any legitimate penological interest and violates HRDC's First Amendment right to communicate its speech with prisoners.

Censorship of Monthly Issues of *Prison Legal News*

35.    Since August 2015, HRDC has identified at least seventy-eight (78) separate occasions in which Defendants censored monthly issues of *Prison Legal News* that were individually addressed to prisoners who subscribed to the magazine. Instead of delivering these magazines to the prisoners who ordered them, Defendants returned the mail at Plaintiff's expense, indicating various reasons for the return, including:

(1) "CONTENTS UNACCEPTABLE";

(2) "CONTENTS UNACCEPTABLE … 2500 C7";

(3) "RELEASED" (even though the Sheriff's Department's own website indicated the prisoner was still in custody at the Men's Central Jail after the mailing);

(4) "OTHER 4/14"; and

(5) "CONTENTS UNACCEPTABLE … NOT CASE RELATED."

/ / /

/ / /

/ / /

[3138846.5]

36.     These 78 occasions are as follows:

**Prisoner Name:**     **Date Returned to HRDC:**

Subscriber 1       August 21, 2015

Subscriber 2       September 25, 2015

Subscriber 1       March 23, 2016

Subscriber 2       March 23, 2016

Subscriber 3       March 23, 2016

Subscriber 4       March 23, 2016

Subscriber 5       March 23, 2016

Subscriber 6       March 23, 2016

Subscriber 7       March 23, 2016

Subscriber 8       March 23, 2016

Subscriber 9       April 6, 2016

Subscriber 4       April 15, 2016

Subscriber 7       April 15, 2016

Subscriber 1       April 19, 2016

Subscriber 3       April 19, 2016

Subscriber 4       April 19, 2016

Subscriber 5       April 19, 2016

Subscriber 7       April 19, 2016

Subscriber 8       April 19, 2016

Subscriber 9       April 19, 2016

Subscriber 10      April 19, 2016

Subscriber 11      April 19, 2016

Subscriber 12      April 19, 2016

Subscriber 13      April 19, 2016

Subscriber 14      April 19, 2016

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

| Prisoner Name: | Date Returned to HRDC: |
|----------------|------------------------|
| Subscriber 15 | April 19, 2016 |
| Subscriber 16 | April 19, 2016 |
| Subscriber 17 | April 19, 2016 |
| Subscriber 18 | April 19, 2016 |
| Subscriber 19 | April 19, 2016 |
| Subscriber 20 | April 19, 2016 |
| Subscriber 21 | April 19, 2016 |
| Subscriber 22 | April 19, 2016 |
| Subscriber 23 | April 19, 2016 |
| Subscriber 13 | April 26, 2016 |
| Subscriber 20 | April 26, 2016 |
| Subscriber 21 | July 26, 2016 |
| Subscriber 10 | September 1, 2016 |
| Subscriber 24 | September 1, 2016 |
| Subscriber 7 | September 2, 2016 |
| Subscriber 17 | September 2, 2016 |
| Subscriber 25 | September 2, 2016 |
| Subscriber 26 | September 2, 2016 |
| Subscriber 27 | September 2, 2016 |
| Subscriber 16 | October 17, 2016 |
| Subscriber 21 | October 17, 2016 |
| Subscriber 23 | October 17, 2016 |
| Subscriber 28 | October 17, 2016 |
| Subscriber 13 | November 17, 2016 |
| Subscriber 29 | November 21, 2016 |
| Subscriber 1 | November 28, 2016 |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

| Prisoner Name: | Date Returned to HRDC: |
|---|---|
| Subscriber 16 | November 28, 2016 |
| Subscriber 20 | November 28, 2106 |
| Subscriber 21 | November 28, 2016 |
| Subscriber 23 | November 28, 2016 |
| Subscriber 24 | November 28, 2016 |
| Subscriber 29 | November 28, 2016 |
| Subscriber 30 | November 28, 2016 |
| Subscriber 1 | December 24, 2016 |
| Subscriber 23 | December 24, 2016 |
| Subscriber 24 | December 24, 2016 |
| Subscriber 29 | December 24, 2016 |
| Subscriber 24 | January 27, 2017 |
| Subscriber 30 | February 4, 2017 |
| Subscriber 29 | March 9, 2017 |
| Subscriber 12 | April 27, 2017 |
| Subscriber 13 | April 27, 2017 |
| Subscriber 20 | April 27, 2017 |
| Subscriber 29 | April 27, 2017 |
| Subscriber 16 | May 1, 2017 |
| Subscriber 1 | May 26, 2017 |
| Subscriber 13 | May 26, 2017 |
| Subscriber 16 | May 26, 2017 |
| Subscriber 24 | May 26, 2017 |
| Subscriber 29 | May 26, 2017 |
| Subscriber 30 | May 26, 2017 |
| Subscriber 42 | May 26, 2017 |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

[3138846.5]

1
2

**Prisoner Name:   Date Returned to HRDC:**

Subscriber 23        June 9, 2017

3

4  In this list and those that follow, HRDC has replaced the names of the prisoners to
5  whom the items were addressed with unique but anonymous identifiers.

6          37.    On information and belief, a vast majority of the other monthly issues
7  mailed to individual prisoners at Men's Central Jail were censored by Defendants.

8          38.    Defendants' policies, practices, and customs are unconstitutional both
9  facially and as applied to HRDC.

10         39.    Defendants' censorship policies, practices, and customs have a chilling
11 effect on HRDC's future speech and expression directed toward prisoners at Men's
12 Central Jail.

13         40.    HRDC will continue to mail monthly issues of *Prison Legal News* to
14 subscribers at Men's Central Jail.

15  <u>Censorship of Sample Issues of *Prison Legal News*</u>

16         41.    Defendants have also censored sample issues of *Prison Legal News*
17 sent to prisoners at the Men's Central Jail in individually addressed envelopes via
18 U.S. First Class Mail.  These issues were sent directly to individuals who requested
19 sample copies of *Prison Legal News* and to others who were identified by HRDC as
20 people likely to be in need of the information that HRDC distributes.

21         42.    Since August 2015, HRDC can identify at least thirty-two (32) separate
22 occasions in which Defendants censored sample issues sent to individually
23 addressed prisoners.  Defendants sent these sample issues back by return mail at
24 HRDC's expense, indicating various reasons for rejecting the mail, including:

25         (1) "CONTENTS UNACCEPTABLE … NOT CURRENT ISSUE.
            RCVD. 1/5/16"; and
26
         (2) "CONTENTS UNACCEPTABLE."

27

28 / / /

[3138846.5]

43.    These 32 occasions are as follows:

| Prisoner Name: | Date Returned to HRDC: |
|---|---|
| Subscriber 3 | January 18, 2016 |
| Subscriber 6 | January 18, 2016 |
| Subscriber 8 | January 18, 2016 |
| Subscriber 12 | January 18, 2016 |
| Subscriber 13 | January 18, 2016 |
| Subscriber 17 | January 18, 2016 |
| Subscriber 19 | January 18, 2016 |
| Subscriber 31 | January 18, 2016 |
| Subscriber 32 | January 18, 2016 |
| Subscriber 33 | January 18, 2016 |
| Subscriber 34 | January 18, 2016 |
| Subscriber 35 | January 18, 2016 |
| Subscriber 11 | March 9, 2016 |
| Subscriber 14 | March 9, 2016 |
| Subscriber 16 | March 9, 2016 |
| Subscriber 18 | March 9, 2016 |
| Subscriber 20 | March 9, 2016 |
| Subscriber 22 | March 9, 2016 |
| Subscriber 28 | March 9, 2016 |
| Subscriber 36 | March 9, 2016 |
| Subscriber 10 | April 15, 2016 |
| Subscriber 15 | April 15, 2016 |
| Subscriber 21 | April 16, 2016 |
| Subscriber 24 | May 20, 2016 |
| Subscriber 29 | May 20, 2016 |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

[3138846.5]

| Prisoner Name: | Date Returned to HRDC: |
|---|---|
| Subscriber 30 | August 16, 2016 |
| Subscriber 37 | September 2, 2016 |
| Subscriber 38 | September 2, 2016 |
| Subscriber 39 | September 9, 2016 |
| Subscriber 40 | September 10, 2016 |
| Subscriber 41 | September 10, 2016 |
| Subscriber 29 | May 22, 2017 |

These prisoners are identified for purposes of this complaint by a unique subscriber identifier, even though not all of them ultimately chose to subscribe to *Prison Legal News*.

44.     On information and belief, a vast majority of the other sample issues mailed to individual prisoners at Men's Central Jail were censored by Defendants.

45.     Defendants' policies, practices, and customs are unconstitutional both facially and as applied to HRDC.

46.     Defendants' censorship policies, practices, and customs have a chilling effect on HRDC's future speech and expression directed toward prisoners at Men's Central Jail.

47.      HRDC will continue to mail sample issues of *Prison Legal News* to prisoners at Men's Central Jail.

Censorship of Subscription Renewal Letters

48.     Defendants have also censored HRDC's correspondence with prisoners containing subscription renewal letters.

49.     Since August 2015, HRDC has identified at least twenty-four (24) individually addressed subscription renewal letters, mailed on separate occasions, that Defendants sent back by return mail, at HRDC's expense, noting:

(1) RELEASED" (even though the Sheriff's Department's own website

18

[3138846.5]

indicated the prisoner was still in custody at the Men's Central Jail after the mailing);

(2) "10/7 RETURN UNACCEPTABLE READING MATERIAL";

(3) "CONTENTS UNACCEPTABLE";

(4) "CONTENTS UNACCEPTABLE … RETURN UNACCEPTABLE READING MATERIAL"; and

(5) "OTHER."

50.    These 24 occasions are as follows:

| Prisoner Name: | Date Returned to HRDC: |
| --- | --- |
| Subscriber 9 | June 16, 2016 |
| Subscriber 8 | September 16, 2016 |
| Subscriber 12 | September 16, 2016 |
| Subscriber 13 | September 16, 2016 |
| Subscriber 17 | September 16, 2016 |
| Subscriber 18 | September 16, 2016 |
| Subscriber 19 | September 16, 2016 |
| Subscriber 20 | September 16, 2016 |
| Subscriber 32 | September 16, 2016 |
| Subscriber 36 | September 16, 2016 |
| Subscriber 28 | October 1, 2016 |
| Subscriber 12 | October 24, 2016 |
| Subscriber 16 | October 24, 2016 |
| Subscriber 17 | October 24, 2016 |
| Subscriber 18 | October 24, 2016 |
| Subscriber 21 | October 24, 2016 |
| Subscriber 23 | October 24, 2016 |
| Subscriber 28 | October 24, 2016 |
| Subscriber 32 | October 24, 2016 |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

| Prisoner Name: | Date Returned to HRDC: |
|---|---|
| Subscriber 36 | October 24, 2016 |
| Subscriber 20 | November 2, 2016 |
| Subscriber 29 | December 14, 2016 |
| Subscriber 29 | January 21, 2017 |
| Subscriber 29 | March 6, 2017 |

51.　　On information and belief, a vast majority of the other subscription renewal letters mailed by HRDC to individual prisoners at Men's Central Jail were censored by Defendants.

52.　　Defendants' policies, practices, and customs are unconstitutional both facially and as applied to HRDC.

53.　　Defendants' censorship policies, practices, and customs have a chilling effect on HRDC's future speech and expression directed toward prisoners at Men's Central Jail.

54.　　HRDC will continue to mail subscription renewal letters to subscribers at Men's Central Jail.

Censorship of Information Brochure Packets

55.　　Since August 2015, HRDC has identified at least eight (8) separate occasions in which informational brochure packets that were individually addressed to prisoners were censored by Defendants.  These brochures were sent directly to individuals who requested information about HRDC publications and to others who were identified by HRDC as people likely to be in need of the information that HRDC distributes.  Defendants sent the packets back to HRDC by return mail, at HRDC's expense, indicating various reasons for the return including the following:

(1) "CONTENTS UNACCEPTABLE"; and

(2) "BANNED 8/29."

/ / /

[3138846.5]

20

56.     These eight occasions are as follows:

| Prisoner Name: | Date Returned to HRDC: |
| --- | --- |
| Subscriber 16 | August 30, 2016 |
| Subscriber 18 | August 30, 2016 |
| Subscriber 20 | August 30, 2016 |
| Subscriber 21 | August 30, 2016 |
| Subscriber 28 | August 30, 2016 |
| Subscriber 36 | August 30, 2016 |
| Subscriber 40 | September 2, 2016 |
| Subscriber 41 | September 2, 2016 |

57.     On information and belief, a vast majority of the other informational brochure packets mailed to individual prisoners at Men's Central Jail were censored by Defendants.

58.     Defendants' policies, practices, and customs are unconstitutional both facially and as applied to HRDC.

59.     Defendants' censorship policies, practices, and customs have a chilling effect on HRDC's future speech and expression directed toward prisoners at Men's Central Jail.

60.     HRDC will continue to mail informational brochure packets to prisoners at Men's Central Jail.

Censorship of Court Opinions

61.     Since August 2015, HRDC has identified at least seven (7) individually addressed copies of court opinions mailed to prisoners at Men's Central Jail that Defendants censored.  All of these court opinions were copies of the Ninth Circuit's opinion in *Clement v. California Dept. of Corr.*, 364 F.3d1148 (9th Cir. 2004), which concerns the validity of a prison regulation barring prisoners from receiving material printed from the internet.  These court opinions were sent directly to

[3138846.5]

1 | individuals who requested them and to others who were identified by HRDC as

2 | people likely to be in need of the information.

3 |      62.    All of the above court opinions were sent back to HRDC by return

4 | mail, at HRDC's expense, indicating various reasons for the return including the

5 | following: "CONTENTS UNACCEPTABLE."

6 |      63.    These seven occasions are as follows:

| Prisoner Name: | Date Returned to HRDC: |
|---|---|
| Subscriber 16 | August 30, 2016 |
| Subscriber 18 | August 30, 2016 |
| Subscriber 20 | August 30, 2016 |
| Subscriber 21 | August 30, 2016 |
| Subscriber 28 | August 30, 2016 |
| Subscriber 36 | August 30, 2016 |
| Subscriber 29 | June 13, 2017 |

     64.    On information and belief, a vast majority of the other court opinions mailed by HRDC to individual prisoners at Men's Central Jail were censored by Defendants.

     65.    Defendants' policies, practices, and customs are unconstitutional both facially and as applied to HRDC.

     66.    Defendants' censorship policies, practices, and customs have a chilling effect on HRDC's future speech and expression directed toward prisoners at Men's Central Jail.

     67.    HRDC will continue to mail court opinions to prisoners at Men's Central Jail.

**Defendants' Censorship of HRDC's Communication to Prisoners in the Restrictive Housing Unit (K-10)**

     68.    Of the one hundred and ten (110) monthly and sample issues of *Prison*

[3138846.5]

*Legal News*, noted *supra* in ¶¶ 35-36 and 42-43, Plaintiff has identified at least seventy-four (74) of those individually addressed issues that were mailed to prisoners in the K-10 unit at Men's Central Jail.  When censoring these issues, Defendants have indicated various reasons for the returned issues, including the following:

(1) "CONTENTS UNACCEPTABLE … K-10 NO NEWSPAPERS";

(2) "K-10 INMATE NO MAGAZINES";

(3) "K-10 … NO MAGAZINES … SECURITY ISSUE – SAFETY OF INMATES AND CUSTODY STAFF";

(4) "CONTENTS UNACCEPTABLE … NOT CASE RELATED … K-10 NO NEWSPAPERS";

(5) "CONTENTS UNACCEPTABLE … INMATE K-10 … NO MAG ALLOWED";

(6) "CONTENTS UNACCEPTABLE … K-10 NO MAGAZINES ALLOWED"; and

(7) "K-10 NO MAGAZINES ALLOWED."

69.     On information and belief, a vast majority, if not all, other monthly and sample issues of *Prison Legal News* mailed to individual prisoners in the K-10 unit were censored by Defendants.

70.     Defendants house prisoners in the K-10 unit for a variety of reasons. The K-10 unit houses pretrial detainees who have been accused of high-profile crimes, regardless of their behavior in custody, as well as prisoners whom Defendants have determined need to be protected for other reasons.  On information and belief, other prisoners are housed in K-10 only as a result of being improperly "de-classed," or discharged, from a mental health classification.  The K-10 unit also houses prisoners whom Defendants deem a threat to jail security and discipline, but on information and belief, these prisoners are not housed in K-10 as part of a behavioral modification program, and some of them have not committed any disciplinary infractions while in Men's Central Jail.  Even among those prisoners who have committed disciplinary infractions in the past, on information and belief,

[3138846.5]

1  some remain housed in K-10 despite demonstrating no current disciplinary

2  problems.

3      71.    Defendants have violated and continue to violate HRDC's

4  constitutional right to communicate with prisoners in the K-10 unit.

5      72.    As stated *infra*, Defendants did not provide adequate notice to HRDC

6  of the reasons for this censorship, or allow it an opportunity to appeal the censorship

7  decisions.

8      73.    Defendants' policies, practices, and customs are unconstitutional both

9  facially and as applied to HRDC's communication with prisoners in the K-10 unit.

10     74.    Defendants' censorship policies, practices, and customs have a chilling

11  effect on HRDC's future speech and expression directed toward prisoners in the K-

12  10 unit at Men's Central Jail.

13     75.    HRDC will continue to communicate with prisoners in the K-10 unit at

14  Men's Central Jail.

15             **Defendants' Failure to Provide Due Process**

16     76.    Defendants' Inmate Mail Regulations, as stated on the Sheriff's

17  Department website, fail to provide any explanation why HRDC's publications and

18  other correspondence have been or are being censored.

19     77.    Defendants' mail policy also fails to require notice of censorship be

20  given to either the intended recipient or the sender of censored mail, nor does it

21  provide an avenue by which the censorship decision can be appealed.

22     78.    In all of the above instances of censorship of HRDC's communication,

23  Defendants failed to provide due process notice to HRDC of the reason for rejecting

24  its materials, in violation of HRDC's Fourteenth Amendment rights.

25     79.    Some of the items returned to HRDC by Defendants contain no

26  indication why the item was censored.  Other items returned to HRDC bear

27  notations such as "CONTENTS UNACCEPTABLE," but those notations fail to

28  explain the penological justification for Defendants' censorship decisions, fail to

[3138846.5]

1    identify the specific mail policy they relied on, state different reasons for censoring

2    identical items of mail, and otherwise fail to give meaningful notice of the

3    censorship.

4          80.    On information and belief, Defendants in other instances refused to

5    deliver HRDC's communication to prisoners at the Men's Central Jail, yet failed to

6    return the censored items to HRDC and failed to provide HRDC with any notice of

7    censorship.

8          81.    At no time did Defendants provide an opportunity for HRDC to appeal

9    the censorship of its mail.

10   **Defendants' Unconstitutional Mail Policy is Causing HRDC Ongoing Harm**

11         82.    Due to Defendants' actions described above, HRDC has suffered

12   damages, and will continue to suffer damages, including, but not limited to: the

13   violation of the HRDC's constitutional rights; the impediment of HRDC's ability to

14   disseminate its political message; frustration of HRDC's non-profit organizational

15   mission; diversion of resources; loss of potential subscribers and customers; an

16   inability to recruit new subscribers and supporters; the loss of reputation; and the

17   costs of printing, handling, mailing, and staff time.

18         83.    Defendants' actions and inactions were and are motivated by ill motive

19   and intent, and were and are all committed under color of law and with reckless

20   indifference to HRDC's rights.

21         84.    Defendants, and their agents, are responsible for or personally

22   participated in creating and implementing these unconstitutional policies, practices,

23   and customs, or for ratifying or adopting them.  Further, Defendants are responsible

24   for training and supervising the staff persons whose conduct has injured and

25   continues to injure HRDC.

26         85.    Defendants' unconstitutional policy, practices, and customs are

27   ongoing, continue to violate HRDC's rights, and are the moving force behind the

28   constitutional violations.  Defendants' unconstitutional policy, practices, and

[3138846.5]

customs will continue unless enjoined.  As such, HRDC has no adequate remedy at law.

86.   HRDC is entitled to injunctive relief prohibiting Defendants from refusing to deliver its monthly magazine *Prison Legal News*, sample issues of *Prison Legal News*, informational brochure packets, subscription renewal letters and court opinions without any legal justification, and prohibiting Defendants from censoring mail without due process of law.

### HRDC's Exhaustion of Pre-Lawsuit Procedures for State-Law Claims

87.   HRDC submitted a state tort claim to Defendant COUNTY OF LOS ANGELES on April 10, 2017.  The County responded by letter on April 13, 2017, asserting that HRDC's claim was untimely as to activities occurring before October 9, 2016.  On May 25, 2017, the County notified HRDC by letter that its claim was rejected as it pertains to activities occurring since October 10, 2016.

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (For Violations of the First Amendment Under Color Of State Law – Free Speech; Section 1983)

88.   Each paragraph of this Complaint is incorporated as if restated fully herein.

89.   The acts described above constitute violations of HRDC's rights, the rights of other correspondents who have attempted to or intend to correspond with prisoners at the Men's Central Jail, and the rights of prisoners confined at the Men's Central Jail, under the First Amendment of the United States Constitution.

90.   HRDC has a constitutionally protected liberty interest in communicating with incarcerated individuals by sending information packets, renewal letters, court opinions and magazines to them via U.S. Mail, a right clearly established under existing case law.

91.   The conduct of Defendants was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the

[3138846.5]

rights of others.

92.    HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants, and those policies were the moving force behind the violations.

93.    The acts described above have caused damages to HRDC, and if not enjoined, will continue to cause damage to HRDC.

94.    HRDC seeks declaratory and injunctive relief, and nominal and compensatory damages against all Defendants, except that it does not seek injunctive relief against Defendant MCDONALD.  HRDC seeks punitive damages against the individual Defendants in their individual capacities.

**SECOND CLAIM FOR RELIEF**
**(For Violations of the Due Process Clause of the Fourteenth Amendment Under Color Of State Law; Section 1983)**

95.    Each paragraph of this Complaint is incorporated as if restated fully herein.

96.    The acts described above constitute violations of HRDC's rights, the rights of other correspondents who have attempted to or intend to correspond with prisoners at the Jail, and the rights of prisoners confined at the Jail, under the Fourteenth Amendment of the United States Constitution.

97.    HRDC has a right under the Due Process Clause of the Fourteenth Amendment to receive notice and an opportunity to object and/or appeal Defendants' decisions to prevent Plaintiff's mail from reaching prisoners at the Jail.

98.    Defendants' policy and practice of censoring HRDC'S information packets, renewal letters, court opinions and magazines fails to provide Plaintiff with individualized notice of the censorship or an opportunity to be heard.

99.    The conduct of Defendants was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the rights of others.

100.    HRDC's injuries and the violations of its constitutional rights were

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

1  directly and proximately caused by the policies and practices of Defendants, and

2  which were the moving force behind the same.

3      101.   The acts described above have caused damages to HRDC, and if not

4  enjoined, will continue to cause damage to HRDC.

5      102.   HRDC seeks declaratory and injunctive relief, and nominal and

6  compensatory damages against all Defendants, except that it does not seek

7  injunctive relief against Defendant MCDONALD.  HRDC seeks punitive damages

8  against the individual Defendants in their individual capacities.

9                    **THIRD CLAIM FOR RELIEF**
10      **(For Violations of the Bane Act, California Civil Code Section 52.1)**

11      103.   Each paragraph of this Complaint is incorporated as if restated fully

12  herein.

13      104.   The acts described above constitute violations of HRDC's rights under

14  California Civil Code § 52.1, in that they constitute interference by threats,

15  intimidation, and/or coercion with the exercise or enjoyment of HRDC's rights

16  secured by the Constitution and laws of the United States and Constitution and laws

17  of California.  Defendants' actions have caused actual damages to HRDC within the

18  meaning of California Civil Code §§ 52 and 52.1.

19      105.   As a proximate result of the conduct of Defendants, HRDC is also

20  entitled to injunctive relief and an award of exemplary damages, civil penalties, and

21  attorneys' fees, as provided by California Civil Code §§ 52 and 52.1, except that it

22  does not seek injunctive relief against Defendant MCDONALD.

23                    **FOURTH CLAIM FOR RELIEF**
24  **(For Violations of Article I, Section 2 of California Constitution – Free Speech)**

25      106.   Each paragraph of this Complaint is incorporated as if restated fully

26  herein.

27      107.   The acts described above constitute violations of HRDC's speech rights

28  under Article I, Section 2 of the California Constitution and have caused damage to

[3138846.5]

1  HRDC, and will continue to cause damage.

2      108.   As a result of the conduct of Defendants, HRDC seeks declaratory and

3  injunctive relief against all Defendants, except that it does not seek injunctive relief

4  against Defendant MCDONALD.

5                    **FIFTH CLAIM FOR RELIEF**
   **(For Violations of Article I, Section 7 of California Constitution – Due Process)**
6

7      109.   Each paragraph of this Complaint is incorporated as if restated fully

8  herein.

9      110.   By failing to give HRDC sufficient notice of the censorship of its

10  publications, and an opportunity to be heard with respect to that censorship,

11  Defendants have deprived and continue to deprive HRDC of liberty and property

12  without due process of law, in violation of the Article I, Section 7 of the California

13  Constitution, and have caused damage to HRDC, and will continue to cause

14  damage.

15      111.   As a result of the conduct of Defendants, HRDC seeks declaratory and

16  injunctive relief against all Defendants, except that it does not seek injunctive relief

17  against Defendant MCDONALD.

18                         **PRAYER FOR RELIEF**

19      WHEREFORE, Plaintiff requests relief as follows:

20      1.   A declaration that Defendants' policies and practices violate the U.S.

21  Constitution and California Constitution;

22      2.   A preliminary and permanent injunction preventing Defendants from

23  continuing to violate the U.S. Constitution and California Constitution, and

24  providing other equitable relief;

25      3.   Nominal damages for each violation of HRDC's rights by the

26  Defendants;

27      4.   Compensatory damages in an amount to be proved at trial;

28      5.   Punitive damages against the individual Defendants in an amount to be

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

[3138846.5]

1  proved at trial;

2       6.      Costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988

3  and under other applicable law, including but not limited to California Civil Code

4  § 52.1 and California Code of Civil Procedure § 1021.5; and

5       7.      Any other such relief that this Court deems just and equitable.

6

7  DATED:  July 3, 2017                Respectfully submitted,

8                                       ROSEN BIEN GALVAN & GRUNFELD LLP

9
                                        By:  */s/ Jeffrey L. Bornstein*
10                                            Jeffrey L. Bornstein

11                                      Attorneys for Plaintiff
12

13                          **DEMAND FOR JURY TRIAL**

14        Plaintiff, the Human Rights Defense Center, hereby demands a trial by jury

15  pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

16

17  DATED:  July 3, 2017                Respectfully submitted,

18                                      ROSEN BIEN GALVAN & GRUNFELD LLP
19

20                                      By:  */s/ Jeffrey L. Bornstein*
                                             Jeffrey L. Bornstein
21
                                        Attorneys for Plaintiff
22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

[3138846.5]